IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRAVIS KEERY,                        )
                                     )
                Plaintiff,           )
                                     )
    v.                               )         1:25cv1125
                                     )
THE MOSES H. CONE MEMORIAL           )
HOSPITAL OPERATING                   )
CORPORATION d/b/a CONE               )
HEALTH et al.,                       )
                                     )
                Defendants.          )

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

This is an action by Plaintiff Travis Keery seeking recovery from Defendants Moses H. Cone Memorial Hospital Operating Corporation and Alamance Regional Medical Center, Inc. for alleged discrimination, failure to accommodate, retaliation, and wrongful discharge in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 <u>et</u> <u>seq.</u> ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), and North Carolina law. (Doc. 8.) Defendants seek to compel Keery to arbitrate his claims. (Docs. 12, 13.) Keery has filed a response in opposition (Doc. 15), and Defendants have replied (Doc. 16). Keery has also filed a motion for leave to file a surreply, which includes a declaration and proposed surreply. (Doc. 17.) Defendants have responded in opposition (Doc. 18), and Keery has replied (Doc. 19). For the reasons set forth below, Defendants'

motion will be granted, Keery's motion will be denied, and this case will be stayed while the case is referred to arbitration.

## I.    BACKGROUND

Keery is a U.S. Army veteran who began working for Defendants in July 2024 pursuant to a travel nurse contract through Aya Healthcare Services, Inc. ("Aya"). (Doc. 8 ¶¶ 6, 15-16.) Aya is a staffing company that places clinicians at healthcare facilities on temporary work assignments. (See Doc. 12-1 ¶ 4.) In late July 2024, Keery met with his unit manager and disclosed his disabilities, which include a lumbar spine injury, post-traumatic stress disorder ("PTSD"), and ongoing treatment through the Department of Veterans Affairs. (Doc. 8 ¶ 19.) He also "raised serious concerns about unsafe unit practices." (Id.) Keery alleges that he requested a series of "reasonable accommodations," but Defendants ignored or denied his requests. (Id. ¶¶ 23-25.) Nevertheless, he maintains that he could "safely and effectively perform all essential duties of his role." (Id. ¶ 26.)

Keery alleges that Defendants assigned violent or physically aggressive male patients to him more frequently than to female nurses. (Id. ¶ 27.) He further alleges repeated instances in which he could not work, either because of "mental health reasons due to sleep deprivation, stress, and PTSD-related issues," severe lumbar pain, or a positive COVID-19 test. (Id. ¶¶ 30, 31, 34.) During the period in which he could not work because of his positive COVID-

2

19 diagnosis, Keery alleges that Defendants terminated his employment, "in violation of Defendants' own medical clearance policies." (Id. ¶¶ 34-35.) Following this termination, Keery alleges that Defendants placed him on a "systemwide restriction," thereby barring him from future assignments within Defendants' healthcare system. (Id. ¶ 42.)

Keery filed his complaint on December 9, 2025, and he timely filed an amended complaint as a matter of course. (Docs. 1, 8.) About two weeks later, Defendants filed the present motion to compel arbitration. (Doc. 12.) Defendants argue that Keery is bound by an Arbitration Agreement he executed with Aya on January 31, 2024 (the "Agreement"). (Doc. 13 at 2.) In support, Defendants submitted the sworn declaration of Farrah Vanderpool, Senior Director of Travel Experience for Aya. (See Doc. 12-1.) Vanderpool, who has worked for Aya since May 2016, reports that she is familiar with the policies and procedures used by Aya "to hire and onboard clinicians for placement at healthcare facilities." (Id. at 2.) She further states that she has reviewed Keery's personnel file and is familiar with its contents. (Id. at 3.)

Vanderpool provides a true and correct copy of the Agreement between Keery and Aya, which bears Keery's signature. (Id. at 8.) In relevant part, the Agreement provides:

**2. Claims Subject To Binding Arbitration**
You and Aya mutually agree that any and all claims arising out of or relating to your employment with Aya or the end

3

of such employment, whether asserted during or following your employment with Aya, will be subject to binding arbitration and not by a lawsuit or resort to court process.  You and Aya agree that the binding arbitration required by this Agreement applies to all covered claims arising from Your past or current assignments or position, as well as any and all covered claims arising from any future assignments or positions with Aya, regardless of whether there is a break in service between such assignments or positions.  The claims covered by this Agreement include, but are not limited to contract claims, quasi-contract claims, equity claims, tort claims, wrongful termination claims, claims of discrimination, harassment or retaliation, wage claims, penalty claims, any claiming [sic] based on or arising out of any offer letter, agreement, handbook, or policy of Aya, claims for breach of confidentiality or misappropriation of trade secrets, claims for injunctive relief, claims alleging breach of privacy rights, and claims based on or alleging violations of . . . the Americans with Disabilities Act . . . or any other applicable public policy, federal, state or other governmental law, constitution, statute, regulation or ordinance.  To the extent required by Executive Order 13665, this Agreement only requires arbitration of claims arising under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment where the employee voluntarily consents to arbitration after a dispute arises.

This Agreement is binding upon, and inures to the benefit of, the Parties and their respective successors and assigns.  In addition, You agree that this Agreement is intended to benefit and may be enforced not only by Aya, but also by any of Aya's officers, directors, owners, clients, shareholders, employees, managers, agents, attorneys, insurers, sureties, benefit plans, clients, and its affiliated, related, parent, sister, or associated business entities (including, but not limited to Aya Healthcare, Inc.).

3.    **Arbitration Procedures**

. . .

The arbitrator shall have the authority to resolve all portions of the dispute, including any disputes relating

> to the interpretation or enforceability of this
> Agreement, and may utilize procedural motions challenging
> the legal sufficiency of a claim or defense, such as
> summary judgment motions, motions for judgment on the
> pleadings, requests for preliminary injunctions or
> equitable relief, and similar proceedings.

(Id. at 6-7 (emphasis added).) According to Vanderpool, Defendants are considered Aya's clients because Aya places clinicians at Defendants' healthcare facilities. (Id. at 3.) The Agreement further provides:

> **4.   WAIVER OF RIGHT TO JURY OR COURT TRIAL**
> **BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP YOUR RIGHTS TO HAVE THE CLAIMS DESCRIBED IN PARAGRAPH 2 ABOVE DECIDED IN A COURT OF LAW BEFORE A JURY OR JUDGE AND INSTEAD ARE AGREEING TO FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR.**

(Id. at 7.) Though Keery later signed an Assignment Offer containing its own arbitration agreement before he began his temporary assignment with Defendants (see id. at 10-13),[1] Defendants do not contend that the Assignment Offer superseded the Agreement, and Keery does not argue otherwise. Indeed, the Assignment Offer expressly provides: "This provision and Agreement does not supersede

---

[1] In relevant part, the Assignment Offer reiterates:

> You and Aya agree that any and all claims arising out of, or relating to, your employment with Aya will be subject to binding arbitration pursuant to the Federal Arbitration Act. The claims covered by this provision include, but are not limited to, contract claims, tort claims, wrongful termination claims, claims of discrimination, harassment or retaliation, wage claims, and claims for violation of any public policy, federal, state or other governmental law, statute, regulation or ordinance.

(See Doc. 12-1 at 13.)

any separate arbitration agreement previously or subsequently executed between Aya and you." (Id. at 13.)

On this record, Defendants move to compel arbitration, and Keery opposes the request. The motion is fully briefed and ready for resolution.

## II. ANALYSIS

Keery appears pro se. Thus, his complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

### A. Existence of a Valid Arbitration Agreement

Keery argues that "the record does not establish consideration or mutual assent." (Doc. 15 at 22.) To create a dispute of material fact, he seemingly relies on an email he sent Vanderpool on February

6

26, 2026, more than two years after he signed the Agreement, in which he requests "clarification on several points related to" the Agreement. (Doc. 15-1 at 2.) Defendants contend that Keery's signature on the Agreement and Aya's commitment to arbitrate any of its own claims against Keery create a valid arbitration contract. (Doc. 16 at 4-5.)

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), reflects "a 'liberal federal policy favoring arbitration.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Thus, "courts must place arbitration agreements on an equal footing with other contracts." Id. "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings and compel arbitration in accordance with the agreement's terms." Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (citation omitted); see 9 U.S.C. §§ 3-4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). As such, the court must determine whether parties have a valid and enforceable agreement to arbitrate. Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019).

7

The burden to establish that a binding arbitration agreement exists rests with the party seeking to compel arbitration. Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 456 (4th Cir. 2017).  The movant must demonstrate the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991). Generally, any ambiguity regarding the scope of the arbitrable issues should be resolved in favor of arbitration.  Moses H. Cone, 460 U.S. at 24-25; Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006).

To determine whether an arbitration agreement exists, a court essentially applies the summary judgment standard to assess whether there is a genuine dispute of material fact regarding the formation of the arbitration agreement.  Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021); Berkeley, 944 F.3d at 234.  Once the movant has met its burden, the nonmovant must affirmatively demonstrate with specific evidence that there is a genuine dispute of material fact requiring trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); see Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3

8

(4th Cir. 2001) (holding that a trial on the existence of an arbitration agreement is inappropriate where the party opposing arbitration fails to unequivocally deny that an arbitration agreement has been made). In making its determination, "the court is entitled to consider materials other than the complaint and its supporting documents." Berkeley, 944 F.3d at 234 (citing Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 86 (4th Cir. 2016)).

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." Rowland, 993 F.3d at 258. The parties agree that North Carolina law governs the contract formation dispute. (See Doc. 13 at 7 n.1; Doc. 15 at 7.) "Under North Carolina law, a valid contract 'requires offer, acceptance, consideration, and no defenses to formation.'" Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (quoting Koltis v. N.C. Dep't of Hum. Res., 480 S.E.2d 702, 704 (N.C. Ct. App. 1997)). "[C]ontracting parties 'must assent to the same thing in the same sense.'" Austin v. Experian Info. Sols., Inc., 148 F.4th 194, 207 (4th Cir. 2025) (quoting Boyce v. McMahan, 208 S.E.2d 692, 695 (N.C. 1974)).

North Carolina law has long recognized that an individual who signs a contract is "under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed by the defendant as to these contents . . . he is held to have signed with full knowledge and assent as to what is therein

9

contained." <u>Nazarova v. Duke Univ.</u>, No. 16CV910, 2017 WL 823578, at *5 (M.D.N.C. Mar. 2, 2017) (quoting <u>Williams v. Williams</u>, 18 S.E.2d 364, 366 (N.C. 1942)). Moreover, "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." <u>Martin v. Vance</u>, 514 S.E.2d 306, 310 (N.C. Ct. App. 1999) (citing <u>Johnson v. Circuit City Stores</u>, 148 F.3d 373, 378 (4th Cir. 1998)); <u>accord</u> <u>King v. Bryant</u>, 737 S.E.2d 802, 807 (N.C. Ct. App. 2013); <u>Starnes v. Conduent Inc.</u>, No. 17CV495, 2018 WL 3466951, at *7 (M.D.N.C. July 18, 2018).[2]

Here, Keery signed the Agreement, thereby acknowledging and agreeing that he carefully read the Agreement, understood it, and knowingly and voluntarily agreed to it. (<u>See</u> Doc. 12-1 at 8.) He also acknowledged that he had received the opportunity to discuss the Agreement with his own legal counsel and availed himself of the opportunity "to the extent desired." (<u>See</u> <u>id.</u>) Keery cannot now cast doubt on his assent to the Agreement's terms by pointing to an emailed request for clarification he sent to Aya's Vanderpool some two years later. Further, the Agreement specifically provides that both Keery and Aya "mutually agree" to arbitration of the covered claims. (<u>Id.</u>) Thus, Keery received sufficient consideration, and

---

[2] And contrary to Keery's argument, the North Carolina Court of Appeals has declined to hold that arbitration agreements – unlike covenants not to compete – require consideration beyond a party's continued employment, because covenants not to compete "are disfavored by the law, whereas agreements to arbitrate are favored and encouraged." <u>See</u> <u>Howard v. Oakwood Homes Corp.</u>, 516 S.E.2d 879, 883 (N.C. Ct. App. 1999).

he manifested his assent to the Agreement's terms via his signature.[3]

**B.    Enforcement by a Third-Party Beneficiary**

Keery asserts that Defendants cannot enforce the Agreement because they did not sign it.  (Doc. 15 at 14-15.)  He argues that the Agreement's "[v]ague references to 'clients' are insufficient." (Id. at 7.)  Defendants counter that it is immaterial whether they are specifically named as "clients" in the Agreement.  (Doc. 16 at 6.)

The third-party beneficiary exception, which allows "a party 'not in privity of contract to bring an action in their own name to enforce the contract made for their benefit[,] was recognized in North Carolina as early as 1842.'"  Mosely v. Balboa Ins. Co., No. 10-cv-0132, 2013 WL 5938096, at *4 (W.D.N.C. Nov. 5, 2013) (quoting Vogel v. Reed Supply Co., 177 S.E.2d 273, 278 (N.C. 1970)).  "North Carolina cases provide that an entity may be a third-party beneficiary without being specifically named in the underlying contract."  Barber v. Charlotte Motor Speedway, LLC, No. 13CV99, 2014 WL 6686730, at *3 (M.D.N.C. Nov. 26, 2014) (first citing Sykes v. Keiltex Indus., Inc., 473 S.E.2d 341 (N.C. Ct. App. 1996); and then citing Runnels v. Robinson, 711 S.E.2d 486 (N.C. Ct. App.

---

[3] Keery contends that Defendants misrepresented their staffing ratios, presenting the ratio as 1:4 when in fact the ratio was 1:5.  (Doc. 15 at 18-19.)  He further contends that this misrepresentation affected his ability to assent to the Agreement.  (Id.)  However, such a misrepresentation, if true, would not materially impact the parties' agreement to arbitrate their claims.

11

2011)); see also Ellen v. A.C. Schultes of Md., Inc., 615 S.E.2d 729, 732 (N.C. Ct. App. 2005) ("[W]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." (quoting Washington Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004))).

Here, the language of the Agreement evidences the parties' clear intent to benefit Aya's clients. (See Doc. 12-1 at 6 ("You agree that this Agreement is intended to benefit and may be enforced not only by Aya, but also by any of Aya's . . . clients . . . .").) As Vanderpool asserts and Keery never disputes, Defendants were in fact clients of Aya. (Id. at 3.) Moreover, the whole purpose of Keery's contract with Aya – a staffing agency - would seemingly have been to obtain a temporary work assignment with Aya's clients. Thus, because the Agreement clearly indicates an intent to include and benefit Aya's clients, and it is undisputed that Defendants are clients of Aya, Defendants may enforce the Agreement.[4]

---

[4] Keery asserts in a conclusory manner that discovery is necessary to develop facts concerning the "existence of consent, the parties' intent, and the enforceability of the arbitration provision." (Doc. 15 at 23-24.) He requests the production of additional documents demonstrating the nature of the relationship between Aya and Defendants, though he does not contest Vanderpool's characterization of Defendants as Aya's clients. (Id.) "[P]rocedures over discovery on a motion to compel arbitration are committed to the 'sound discretion' of the district court." Heidbreder v. Epic Games, Inc., 438 F. Supp. 3d 591, 596 (E.D.N.C. 2020) (quoting Berkeley, 944 F.3d at 242). Because all questions raised by Keery are readily answered by the record now before the court, no discovery is necessary.

12

### C. Questions of Scope and Enforceability

Keery argues that questions concerning the Agreement's scope and enforceability must be decided by the court. (Doc. 15 at 4.) He further asserts that his claims arise pursuant to Defendants' independent statutory duties rather than any contractual terms. (Id. at 13-14.) But Keery concedes that the court may not decide "[t]hese gateway issues" if they are "clearly delegated to an arbitrator." (Id. at 4.) In response, Defendants point to the Agreement's delegation clause.[5] (Doc. 16 at 7-8.) Though Keery contends that the Agreement as a whole is substantively and procedurally unconscionable, he does not challenge the delegation clause. (Doc. 15 at 19-21.)

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). This reality "merely reflects the principle that arbitration is a matter of contract." Id. at 69. "Thus, when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that

---

[5] A delegation clause is a contractual provision that "tasks the arbitrator," rather than the court, "with determining whether a particular controversy is covered by the parties' agreement to arbitrate." Mod. Perfection, LLC v. Bank of Am., N.A., 126 F.4th 235, 241 (4th Cir. 2025) (citing Hengle v. Treppa, 19 F.4th 324, 335 (4th Cir. 2021)).

13

delegation clause and send that question to arbitration." Gibbs v. Haynes Invs., LLC, 967 F.3d 332, 337 (4th Cir. 2020) (quoting Rent-A-Center, 561 U.S. at 67). Indeed, "'a court may not decide an arbitrability question that the parties have delegated to an arbitrator' 'even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.'" Mod. Perfection, LLC v. Bank of Am., N.A., 126 F.4th 235, 241 (4th Cir. 2025) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68, 69 (2019)). A court may only consider a delegation clause's enforceability "if the claimant specifically attacks the validity of the delegation clause itself." Gibbs, 967 F.3d at 337 (citing Minnieland, 867 F.3d at 455).

Here, in relevant part, the Agreement provides: "The arbitrator shall have the authority to resolve all portions of the dispute, including disputes relating to the interpretation or enforceability of this Agreement." (Doc. 12-1 at 7.) Courts routinely enforce delegation provisions in arbitration agreements containing similar language. See Mod. Perfection, 126 F.4th at 242 (collecting cases). As one other court has already found, the same delegation clause "clearly and unmistakably delegates to the arbitrator questions of arbitrability." O'Dell v. Aya Healthcare, Inc., No. 22-cv-01151, 2023 WL 3134173, at *6 (S.D. Cal. Apr. 27, 2023). Thus, questions of scope and enforceability – including whether the Agreement as a whole is unconscionable or whether Keery's claims arise out of or

14

relate to his employment with Aya and its clients – will be determined by the arbitrator. See Rent-A-Center, 561 U.S. at 73-74.

### D. Stay of the Action

Though Defendants initially expressed a preference that the court dismiss the action in the event it compels arbitration, Keery requests a stay of the proceedings. (Doc. 15 at 22-23.) Defendants "do not object to staying the action pending arbitration." (Doc. 16 at 12 n.5.)

Section 3 of the FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." Smith v. Spizzirri, 601 U.S. 472, 478 (2024). The court will therefore stay this action pending completion of arbitration.

### E. Leave to File Surreply

Finally, Keery requests leave to file a surreply, arguing that Defendants' reply brief raised "new and dispositive arguments." (Doc. 17 at 1.) He points to Defendants' contentions that he introduced new factual allegations, that he cannot challenge arbitrability without amending the complaint, and that he is not

15

entitled to discovery on the issue of arbitrability. (Id.) Defendants respond that none of the arguments in their reply brief warrants a surreply because each argument responded to points already raised by Keery. (Doc. 18 at 1-2.)

Defendants are correct on all counts. Their challenged arguments each addressed points made by Keery in his response in opposition to the motion to compel arbitration. Moreover, Keery's proposed surreply does not even respond to the alleged "new" arguments raised in Defendants' reply brief. (See Doc. 17 at 7-12.) A review of the proposed surreply also confirms that it would not alter the court's analysis of the motion to compel arbitration in any way. (See id.) Accordingly, Keery's motion for leave to file surreply will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss or, in the alternative, to stay and to compel arbitration (Doc. 12) is GRANTED, this matter shall be REFERRED to arbitration in accordance with this Memorandum Opinion and Order, and the case shall be STAYED in the interim. The parties are DIRECTED to provide a report to the court every 90 days as to the status of the arbitration.

IT IS FURTHER ORDERED that Keery's motion for leave to file surreply (Doc. 17) is DENIED.

16

/s/ Thomas D. Schroeder
United States District Judge

July 22, 2026